[No. 53776-3. En Banc. November 10, 1988.]

*In the Matter of the Personal Restraint of*
BENJAMIN J. HARRIS III, *Petitioner.*

692

*Allen M. Ressler* and *Browne & Ressler,* for petitioner.

*John W. Ladenburg, Prosecuting Attorney,* and *Chris Quinn–Brintnall, Senior Appellate Deputy,* for respondent.

DOLLIVER, J.—In October of 1986, this court affirmed Benjamin Harris' aggravated first degree murder conviction and death sentence. *State v. Harris,* 106 Wn.2d 784, 725 P.2d 975 (1986), *cert. denied,* 480 U.S. 940 (1987). In the present 326–page personal restraint petition, Mr. Harris challenges his death sentence and the jury's finding as to the aggravating factor. He frames some 36 issues, many of which are facial or as–applied challenges to this state's death penalty statute. (See appendix.)

This court considered each of these issues en banc at an administrative conference. *See* RAP 16.11(b), (c). The court has also reviewed the trial transcript. Based on the arguments presented and the record before us, we find no reason to reconsider the issues raised and decided on direct appeal (*see In re Taylor,* 105 Wn.2d 683, 687, 717 P.2d 755 (1986)) and no basis on which to grant relief on any of the issues not previously raised. *See In re Jeffries,* 110 Wn.2d 326, 752 P.2d 1338 (1988). Two issues warrant discussion, however.

First, petitioner challenges the death penalty charging policy of the Pierce County Prosecuting Attorney's Office. The record indicates that the prosecutor files a notice of intent to seek the death penalty in every aggravated first degree murder case unless the defendant or his attorney brings evidence of mitigating circumstances to the State's attention. Petitioner would liken this policy to the one we

found invalid in *State v. Pettitt,* 93 Wn.2d 288, 295, 609 P.2d 1364 (1980); *see also State v. Rowe,* 93 Wn.2d 277, 609 P.2d 1348 (1980); *State v. Gilcrist,* 91 Wn.2d 603, 590 P.2d 809 (1979); *State v. Lee,* 87 Wn.2d 932, 558 P.2d 236 (1976).

The prosecutor in *Pettitt* had an automatic policy of filing habitual criminal charges against all defendants with three or more prior felonies. He testified he "could imagine no situation which would provide for an exception to the mandatory policy." *State v. Pettitt, supra* at 296. The Pierce County Prosecuting Attorney, by contrast, will consider any mitigating factors the defendant brings to his attention. The availability of this "escape valve" makes the Pierce County policy more akin to the habitual criminal charging policy we upheld in *Rowe* than to the inflexible, absolute policy challenged in *Pettitt.* In *Rowe,* one of the prosecutor's written charging standards provided that a habitual criminal charge would be made "in all cases" in which the defendant was charged with a "high impact" crime and had two valid prior convictions. *See State v. Rowe, supra* at 281. The standards also contained a section which allowed for exceptions to all charging criteria, however, where "special factors" required leniency. *State v. Rowe, supra* at 282. This kind of "individualized tempering" of an otherwise absolute charging policy is also present here.

There is, moreover, a significant distinction between the death penalty charging decision at issue here and the decision whether to file habitual criminal charges. Pertinent factors the prosecutor may consider in making the latter decision include the nature of the defendant's present and prior convictions, the amount of time between them, and the State's ability to prove the existence and validity of the prior convictions. *State v. Lee, supra* at 935; *State v. Nixon,* 10 Wn. App. 355, 356–57, 517 P.2d 212 (1973). These are, in the main, matters of public record to which the prosecutor has ready access.

A prosecutor who charges a defendant with aggravated first degree murder, by contrast, must make the more subjective determination of whether there is "reason to believe that there are not sufficient mitigating circumstances to merit leniency." RCW 10.95.040; *see also State v. Campbell,* 103 Wn.2d 1, 25, 691 P.2d 929 (1984), *cert. denied,* 471 U.S. 1094 (1985). Although some statutory mitigating factors involve objective facts the prosecutor can readily ascertain (*see, e.g.,* RCW 10.95.070(1) (lack of criminal history)), most are in the nature of explanations or excuses related to the crime itself. RCW 10.95.070(2) (extreme mental disturbance), (3) (consent of victim), (4) (minor participation as an accomplice), (5) (duress), and (6) (mentally impaired capacity). As with criminal defenses generally, these tend to be matters about which the defendant and his attorney will have more knowledge than the State. Additionally, although the State will at trial bear the burden of proving there are insufficient mitigating circumstances to merit leniency, *State v. Rupe,* 101 Wn.2d 664, 701, 683 P.2d 571 (1984), it cannot attempt to rebut on any particular point unless the defendant first presents evidence on it. *State v. Bartholomew,* 101 Wn.2d 631, 642–43, 683 P.2d 1079 (1984). The Pierce County charging policy makes sense in light of this evidentiary principle.

Nothing in this court's decision in *Pettitt* condemns a charging policy which allows for exceptions and is based on applicable statutory and evidentiary criteria. *See State v. Rowe, supra* at 282–87; *see also* 2 W. LaFave & J. Israel, *Criminal Procedure* § 13.2(d), at 176 (1984) (discussing *Pettitt* and *Rowe*).

Petitioner also claims the prosecutor, by filing a death notice, penalized him for exercising his right to remain silent. *See Wayte v. United States,* 470 U.S. 598, 608, 84 L. Ed. 2d 547, 105 S. Ct. 1524 (1985) (decision to prosecute cannot be based on defendant's exercise of constitutionally protected rights). We disagree. In terms of its effect on a defendant's privilege against self–incrimination, Pierce County's policy of relying on the defendant for information

regarding mitigating factors is quite similar in effect to CrR 4.7(b). Under this rule, the trial court may order the defendant to inform the prosecutor of the general nature of the defense and to specify whether certain defenses or issues will be raised. CrR 4.7(b)(2)(xii)–(xiv). Where, as in this jurisdiction, the defendant has a reciprocal right of discovery, requiring him to reveal these matters prior to trial does not violate his privilege against self–incrimination. *Williams v. Florida,* 399 U.S. 78, 26 L. Ed. 2d 446, 90 S. Ct. 1893 (1970); *see also Wardius v. Oregon,* 412 U.S. 470, 37 L. Ed. 2d 82, 93 S. Ct. 2208 (1973) (notice of alibi rule violates due process if defendant has no reciprocal discovery rights). As the Supreme Court observed in upholding Florida's "notice of alibi" rule:

> [T]he pressures that bear on [the defendant's] pretrial decision are of the same nature as those that would induce him to call alibi witnesses at the trial: the force of historical fact beyond both his and the State's control and the strength of the State's case built on these facts. Response to that kind of pressure by offering evidence or testimony is not compelled self–incrimination transgressing the Fifth and Fourteenth Amendments.

*Williams v. Florida, supra* at 85. Although the decision whether to seek the death penalty occurs earlier in the process than does discovery, this fact does not make the required disclosures any the more "compelled." *See also Bordenkircher v. Hayes,* 434 U.S. 357, 54 L. Ed. 2d 604, 98 S. Ct. 663 (1978) (prosecutorial threat to file additional charges unless defendant pleads guilty does not violate privilege against self–incrimination).

For all of these reasons, petitioner has not shown that the charging policy infringed upon any of his constitutional rights.

The second claim meriting discussion involves the admission of petitioner's 1969 manslaughter conviction in the penalty phase of trial. Prior convictions are admissible as nonstatutory aggravating factors. *State v. Bartholomew,* 101 Wn.2d 631, 640–41, 683 P.2d 1079 (1984). Petitioner

claims, however, that the State must prove every aspect of the constitutional validity of any prior guilty plea, including specifically that (1) the defendant was aware of all of his constitutional rights, (2) he received "real notice" of the charge, and (3) the plea court obtained an adequate factual basis for the plea. Petition, at 21–31. Petitioner would impose this burden regardless of whether the defendant challenges the plea either during the capital sentencing hearing or on direct appeal, and, apparently, even if he fails at any time to assert ignorance of his rights. Relying on such an absolute proof requirement, petitioner characterizes his 1969 conviction as "facially unconstitutional on the record." Petition, at 24.

In rejecting this claim, we emphasize three points. First, the prior conviction was not an "element" the State had to prove in order to impose the death penalty, but rather one piece of evidence in the State's entire penalty phase case. *See* RCW 10.95.020; *State v. Bartholomew, supra.* Petitioner's challenge thus is not to the sufficiency of the State's case, but to the admissibility of a particular item of evidence. The analogies both parties make to habitual criminal proceedings are therefore imprecise at best. *See State v. Hennings,* 100 Wn.2d 379, 670 P.2d 256 (1983) (challenge to validity of prior convictions in habitual criminal proceeding is challenge to sufficiency of State's evidence and thus raises double jeopardy concerns).

Second, petitioner's prior conviction was counseled. This is not, therefore, a case like *Burgett v. Texas,* 389 U.S. 109, 19 L. Ed. 2d 319, 88 S. Ct. 258 (1967), where the prior conviction used to enhance the defendant's sentence was presumptively void under the Sixth Amendment. *See Marshall v. Lonberger,* 459 U.S. 422, 437, 74 L. Ed. 2d 646, 103 S. Ct. 843 (1983) (absent evidence to the contrary, counseled defendant may be presumed to have been informed of the nature of the charges).

Third, unlike *Burgett,* this is not a direct appeal but rather a personal restraint proceeding. A personal restraint petitioner bears the burden of proving he was prejudiced by

a constitutional error. *In re Jeffries,* 110 Wn.2d 326, 346, 752 P.2d 1338 (1988); *In re Hews,* 99 Wn.2d 80, 660 P.2d 263 (1983). A petitioner who seeks relief from a guilty–plea based conviction thus must prove the plea is in some manner constitutionally infirm. *In re Hews, supra* at 91. There is no reason a lesser burden should apply where, as here, the petitioner is challenging the use of a prior conviction in a subsequent trial. Accordingly, petitioner cannot rely solely on the State's asserted failure to prove the validity of the prior conviction at trial, but must instead show some infirmity in fact exists in that conviction. *See Johnson v. Mississippi,* __ U.S. __, 100 L. Ed. 2d 575, 108 S. Ct. 1981 (1988) (where prior conviction admitted in capital sentencing proceeding is successfully challenged in postconviction proceeding, death sentence must be vacated).

Petitioner has not met this burden. The manslaughter judgment and sentence form shows he was represented in that proceeding by the same attorney who represented him at trial and on appeal in the present case. The document also says the trial court advised petitioner of the nature of the charges against him, as well as his rights to be present at trial, to be tried by a jury, to confront the witnesses against him, and to have witnesses called on his behalf at county expense.

Petitioner complains that the form does not mention the right to remain silent. Since petitioner fails even to allege ignorance of this right, however, he has not made a prima facie showing of a constitutional violation. *See In re Hews, supra* at 88. Nor, absent such an allegation, is the State under any obligation in this proceeding to submit evidence of petitioner's knowledge of his rights. RAP 16.9; *see also State v. Chervenell,* 99 Wn.2d 309, 314, 662 P.2d 836 (1983) (validity of prior convictions used to enhance sentence may be shown with extrinsic evidence).

Petitioner also complains that the 1969 judgment and sentence form does not contain the factual basis for the plea. *See* CrR 7.3 (describing contents of judgment); *see also* CrR 4.2(g) (factual basis is contained in statement of

defendant on plea of guilty). The factual basis requirement is intended to ensure that the defendant possesses an understanding of the law in relation to the facts. *In re Keene*, 95 Wn.2d 203, 209, 622 P.2d 360 (1980). Again, petitioner fails even to allege that he lacked such awareness. Under these circumstances, his understanding of the nature of the charge may be assumed from his representation by presumptively competent counsel. *Marshall v. Lonberger, supra* at 437.

To summarize, petitioner has not made a prima facie showing of constitutional error as to any of his claims. The personal restraint petition is therefore denied.

## APPENDIX

The issues are framed in the personal restraint petition as follows:

1. The Prosecuting Attorney's interpretation, construction and application of RCW 10.95.040 in petitioner's prosecution was unconstitutional, denied petitioner rights and privileges guaranteed by the constitution of the United States and the constitution and laws of the State of Washington.

2. By informing the jury that it was not responsible for determining whether the penalty of death was the appropriate sentence, the prosecution's closing argument violated the Eighth Amendment's high standard of reliability in capital cases.

3. The trial court erred in failing to instruct the jury the death penalty should not be imposed solely to enact retribution or in a spirit of vengeance.

4. Petitioner's constitutional right to due process of law was violated when the trial court admitted evidence of his 1969 convictions of assault in the third degree and manslaughter in the special sentencing proceedings.

5. The sentence of death imposed upon petitioner must be invalidated because the jury, in the special sentencing proceeding, considered evidence of a prior conviction constitutionally invalid on its face in violation of the constitutional prohibition against constitutionally invalid convictions being used or considered in subsequent sentence enhancement proceedings.

6. Washington's capital punishment statute, and/or its application to petitioner, is unconstitutional in that it permits the consideration of prior convictions which are constitutionally invalid at the special sentencing proceeding and prohibits a defendant from contesting the constitutional validity of prior convictions offered for consideration at the

special sentencing proceeding in violation of rights guaranteed by the Fifth, Eighth and Fourteenth Amendments.

7. Petitioner's constitutional right to a fair trial and due process of law was violated when the trial court instructed the jury that they had "nothing whatever to do with the punishment to be inflicted in case of a violation of law" and that "the fact that punishment may follow conviction cannot be considered by [the jury] except insofar as it may tend to make [the jury] careful."

8. The failure to require the jury to articulate what mitigating circumstances it found, and how they were weighed against the aggravating factors, prevents meaningful appellate review of the death sentence under RCW 10.95.130. To affirm the death sentence in this case, therefore, would violate defendant's right to an appeal under Const. art. 1, § 22 (amend. 10), and his right to be free from the arbitrary and capricious infliction of capital punishment, guaranteed by the Eighth Amendment.

9. Defendant Harris' sentence of death is grossly disproportionate to codefendant's sentence. This court should vacate the death sentence pursuant to RCW 10.95.130(2)(b).

10. Petitioner was denied a fair trial, due process and rights guaranteed by the Constitution when the trial court instructed the jury in the special sentencing proceeding that it was required to consider anew all of the testimony and exhibits admitted into evidence in phase one of petitioner's trial.

11. The information report submitted to the Clerk of the Supreme Court of Washington by the trial court violated petitioner's rights to confrontation, to due process of law and to the right to counsel.

12. Petitioner's constitutional right to due process of law and equal protection of the law was violated and denied when the Supreme Court failed to perform the review of sentence required by RCW 10.95 pursuant to the terms and provisions of that statute.

13. Petitioner's constitutional right to a fair trial and due process of law under the due process and cruel punishment provisions of the federal and state constitutions were violated when the trial court instructed the jury that it would in the special sentencing proceeding admit any relevant evidence and instructed the jury that it could consider any relevant factors.

14. Petitioner was denied his constitutional right to a fair trial and due process of law by the court instructing the jury that it had nothing whatever to do with the punishment to be inflicted and by instructing the jury that throughout its deliberation it was not permitted to be influenced by sympathy.

15. Petitioner's constitutional rights were violated and denied when the trial court admitted petitioner's custodial statements in evidence without first determining whether the statement was voluntarily made after a knowing and intelligent waiver of his right to remain silent.

16. Petitioner's constitutional right to a fair trial, due process of law and equal protection were violated and denied by the trial court when it admitted into evidence statements of petitioner, offered by the State in its case in chief which were made in connection with, and relevant to, an offer to plead guilty to a reduced charge made by petitioner.

17. Petitioner's constitutional right to be present at every stage of his trial, to a fair trial, to due process of law, and to confront the witnesses against him was violated and denied.

18. Petitioner's right to confront witnesses against him, to not incriminate himself, to present evidence, to be present at every stage of trial, to assist counsel, to a fair trial and to due process of law guaranteed by the state and federal constitutions were violated and denied when he was tried, convicted, sentenced and adjudged guilty while he was not competent to stand trial.

19. The trial court in arraigning petitioner on the crime charged denied and violated petitioner's constitutional right to appear, to be informed of the nature and cause of the accusation, to a fair trial and to due process of law.

20. Petitioner's conviction must be vacated because the trial court's instruction to the jury regarding the elements and facts necessary to convict petitioner of the aggravated first degree murder charge violated and denied petitioner his constitutional right to a fair trial, due process of law, equal protection of the law and to be informed of the nature of the charge.

21. Petitioner's conviction of aggravated first degree murder in violation of RCW 10.95.020(5) is unconstitutional and violative of Washington law because the verdict of guilty entered is inconsistent with the verdict of acquittal entered against his codefendant for the same offense.

22. RCW 10.95.020(5) as construed, interpreted and applied in petitioner's case is unconstitutional and the verdict finding the aggravating circumstance must be vacated.

23. Counsel's representation of petitioner at trial, the special sentencing proceeding and on appeal was deficient and ineffective and denied petitioner his right to a fair trial, due process of law and assistance of counsel guaranteed by the Sixth, Eighth and Fourteenth Amendments.

24. Washington's capital punishment law is a sentencing enhancement statute which authorized imposition of the enhanced sentence of death for the crime of first degree murder, a noncapital crime, in violation of the constitutional prohibition against imposing multiple punishment for commission of a single offense or act set forth by the double jeopardy clauses of both the state and federal constitutions.

25. Washington's capital punishment statute is unconstitutional in that it violates the due process clause by establishing a mandatory presumption in favor of the death penalty and imposes on a defendant the burden of persuading the jury that death is not the appropriate sentence.

26. Washington's death penalty law, as construed by the Washington Supreme Court violates and denied a defendant rights guaranteed by the state and federal constitutions.

27. Washington's capital punishment is unconstitutional because it permits death penalty imposition only by a jury.

28. The discretionary authority to determine whether a defendant will be subject to the death penalty granted the prosecutor by Washington's death penalty statute violates the constitutional strictures and requirements of the fourth, fifth, sixth, eighth and fourteenth amendments to the constitution.

29. Washington's death penalty law violates the Eighth Amendment's prohibition against cruel and unusual punishment and Const. art. 1, § 14's prohibition against cruel punishment in that it does not meet the standard of reliability for determining that death is the appropriate punishment in a specific case.

30. RCW 10.95.040 violates the equal protection clause of the fourteenth amendment of the federal constitution and article 1, section 12 of the Washington State Constitution, by purporting to authorize the prosecution to seek different degrees of punishment for the same criminal act.

31. Washington's death penalty law, RCW 10.95, is an unconstitutional encroachment by the Legislature upon a determination which lies exclusively with the judiciary, violative of the separation of powers doctrine.

32. Washington's capital punishment law is an unconstitutional encroachment by the Legislature upon a determination which lies exclusively with the executive, violative of the separation of powers doctrine.

33. RCW 10.95 constitutes an unlawful delegation of legislative authority to the executive and/or judicial branches of government.

34. By the manner in which RCW 10.95.130(2)(b) dictates supreme court review of a death sentence, the Legislature has encroached upon a function reposed exclusively in the judiciary in violation of the constitutional doctrine of separation of powers.

35. Washington's capital punishment law is unconstitutional because it permits application of the preponderance of the evidence standard of proof to determine facts necessary to the enhancement and imposition of sentence.

36. The constitutional defects of RCW 10.95 promote the unequal administration of the law, in violation of the equal protection clause of the Fourteenth Amendment.

BRACHTENBACH, DORE, ANDERSEN, CALLOW, and DURHAM, JJ., concur.

UTTER, J. (dissenting)—In my previous dissent in *State v. Harris,* 106 Wn.2d 784, 802, 725 P.2d 975 (1986), *cert. denied,* 480 U.S. 940 (1987) (Utter, J., dissenting), I voiced concern over the lack of clear proportionality standards and the incongruity between petitioner's death sentence and the lesser sentences imposed for more egregious contract killings. *Harris,* at 803–06. These concerns still exist. In this personal restraint petition, however, petitioner raises additional issues concerning the constitutionality of the death penalty as applied to him. Two of these issues have great merit: the arbitrary nature of the Pierce County Prosecutor's death penalty charging policy and the danger of introducing, at the special sentencing hearing, constitutionally defective convictions as additional aggravating factors. Because I cannot agree with the majority's treatment of these issues, I must dissent.

## I

Pierce County's aggravated murder charging policy is unconstitutional, violating equal protection and Washington Constitution article 1, section 14. At the time relevant here, the Pierce County Prosecutor, in every aggravated murder case, automatically filed a notice of intent to seek the death penalty. Only if the defendant himself came forward, before the filing of this notice of intent, with evidence mitigating against seeking the death penalty, would the prosecutor consider any mitigating factors. In the present case, the prosecutor filed the notice 6 days after charging Harris with murder—days after counsel was appointed to defend him. This raises several serious problems.

In *State v. Dictado,* 102 Wn.2d 277, 687 P.2d 172 (1984), this court upheld the constitutionality of RCW 10.95.040(1)

against a challenge that it conferred too much discretion on prosecutors in choosing to seek the death sentence or life without parole, violating the equal protection doctrine of *State v. Zornes,* 78 Wn.2d 9, 21, 475 P.2d 109 (1970).[1] The statute's saving grace, we held, was that it required the prosecutor to evaluate the evidence of mitigating circumstances before making his or her final charging decision. This evaluation to a vital degree directed the prosecutor's discretion in deciding whether to seek the harsher sentence. 102 Wn.2d at 297. This court reached a similar result in *State v. Campbell,* 103 Wn.2d 1, 25, 691 P.2d 929 (1984), *cert. denied,* 471 U.S. 1094 (1985).

Pierce County's policy, as it operated in Harris's case, did not fulfill this requirement because it allowed the prosecutor to file the notice of special hearing without considering mitigating evidence. This failure resulted from the prosecutor relying solely on the defendant to come forward with the mitigating factors. If, for whatever reason, the defense failed to produce such evidence, the Pierce County Prosecutor would have no mitigating factors to consider. Without even the prosecutor's attempt to obtain evidence of mitigating factors, there could be no information to direct discretion. Because of this, there was no assurance that the careful consideration demanded by *Dictado* and *Campbell* has been undertaken. The apparent fact that the prosecutor's office automatically sought the death penalty further

---

[1]As I made clear in my dissent in *State v. Campbell,* 103 Wn.2d 1, 41, 691 P.2d 929 (1984), *cert. denied,* 471 U.S. 1094 (1985) (Utter, J., dissenting), I based my concurrence with the *Dictado* majority because of the latter case's limited application to "the mandatory life sentence and not to the additional problems raised by the death penalty aspect of the sentencing scheme." 103 Wn.2d at 42. I believed then, as I do now, that Washington's capital punishment statute, as a general scheme, is unconstitutional in that it violates equal protection, is void for vagueness, and violates article 1, section 14 of the Washington Constitution by conferring standardless discretion upon the prosecutor. I write this present dissent because I find that the Pierce County charging policy is contrary to not only my own views but to the law expressed in the majority opinions of this court.

suggests that such a consideration was not the practice there.[2]

The record also shows that the prosecutor allowed inadequate time—only 6 days—for the defense to come forward with mitigating evidence. Six days is not enough time when the decision to seek a person's execution is being made. Gathering psychological data, family history, employment records, and other information about the defendant— whether done by the prosecutor or by defense counsel— generally will take much more time than this. More importantly, the statute requires the prosecutor to evaluate the mitigating evidence before him before making the charging decision. I doubt, even if the prosecutor already had the evidence before him, that 6 days is enough time to make the careful, informed decision the statute envisions. This limited period of time begs the inevitable outcome; it suggests that the decision was made in advance.

In support of Pierce County's policy, the State cites our decisions in *State v. Bartholomew,* 101 Wn.2d 631, 683 P.2d 1079 (1984) (*Bartholomew* II) and *State v. Jones,* 99 Wn.2d 735, 664 P.2d 1216 (1983).[3] Reliance on these two cases is improper, for neither of them deal with death penalty charging procedure. *Bartholomew* II limited the type of

---

[2] One might argue that a policy which automatically seeks the death penalty does not violate *Zornes* because all aggravated murder cases are treated "equally." The heart of the *Zornes* doctrine, however, is the protection from prosecutorial arbitrariness. The mere fact that Pierce County arbitrarily uses its discretion consistently does not save it from offending equal protection.

[3] The notice of special sentencing proceeding, sent to petitioner, also cited *Bartholomew* II for authority:

[T]here is reason to believe that there are not sufficient mitigating circumstances to merit leniency. The prosecution may open the sentencing phase *only* with the defendant's criminal record and evidence which would have been admissible at the guilt phase of the trial. Presentation of mitigating circumstances is the responsibility of the defendant. See *State v. Bartholomew,* 101 Wn.2d 631, 643, [683] P.2d [1079] (1984). No mitigating circumstances have been brought to the attention of this office.

Notice of Special Sentencing Proceeding To Determine Whether the Death Penalty Should Be Imposed, at 2.

evidence that the prosecution could introduce at the aggravated murder sentencing proceeding itself. We held there that the prosecutor's presentation of nonstatutory aggravating factors was "limited to defendant's criminal record, evidence that would have been admissible at the guilt phase, and evidence to rebut matters raised in mitigation by the defendant." 101 Wn.2d at 642. In so holding, we limited the liberal language of RCW 10.95.070 allowing the jury to "consider any relevant factors" during the sentencing proceeding to the consideration of mitigating factors only. One can infer from this holding that it will be the defense which presents the mitigating factors to the jury. *Bartholomew* II, however, says nothing about a duty of the defense to present mitigating factors to the prosecutor at the charging stage. To justify Pierce County's policy on the basis of this authority misconceives the thrust of that opinion.

*State v. Jones, supra,* is even less persuasive. *Jones* had nothing to do with the aggravated murder charging procedure at issue here. It dealt with the right of a man charged with second degree assault to plead not guilty over the trial court's imposed plea of not guilty by reason of insanity. 99 Wn.2d at 747.

If the informed use of discretion and consideration of mitigating factors keeps RCW 10.95.040(1) from violating *Zornes,* then lack of these saving graces must violate the equal protection doctrine set out in that case. *See* 78 Wn.2d at 21.

Not only does Pierce County's policy violate the strictures set down in *Dictado,* it also raises a different sort of equal protection issue. By depending on defendant and his or her counsel to come forward with the mitigating factors, the prosecutor's policy places great importance on the quality of the defendant's counsel. Because of this, an aggravated murder defendant having the resources to hire an expert defense attorney immediately may stand a lesser chance of facing a special sentencing proceeding than the indigent who has had counsel appointed for him. Many

commentators argue that the death penalty is applied more frequently to minorities and those defendants with fewer resources. *See, e.g.,* M. Meltsner, *Cruel and Unusual—The Supreme Court and Capital Punishment* (1973); Baldus, Plaski & Woodworth, *Arbitrariness and Discrimination in the Administration of the Death Penalty: A Challenge to State Supreme Courts,* 15 Stetson L. Rev. 133 (1986); Comment, *McCleskey v. Kemp: Constitutional Tolerance for Racially Disparate Capital Sentencing,* 41 Miami L. Rev. 295 (1986). Pierce County's policy seems even to go beyond this, creating circumstances where less fortunate defendants have a greater chance of facing the special sentencing proceeding in the first place. The "safety valve" that the majority refers to may only be available to the more fortunate.[4]

Compounding the problem of placing the burden on the defendant to produce the mitigating factors is the issue of the death penalty statute's vagueness, which I discussed in my dissent in *Campbell,* 103 Wn.2d at 43 (Utter, J., dissenting). As I stated there, although RCW 10.95.070 lists examples of factors a jury may consider in finding leniency, the statute does not define a "mitigating factor." This shortcoming fails to direct a prosecutor's discretion in choosing to seek the death sentence. Worse, if the onus is on the defendant to produce these undefined mitigating factors, the statute produces even less certainty that the prosecutor has not exercised standardless discretion. The defendant is left to guess which factors the prosecutor will find mitigating enough to stay his hand. This is far from what I believe this court had in mind in upholding the death penalty against equal protection and void for vagueness challenges. *See State v. Campbell, supra.* Pierce County's policy appears to produce a predilection for seeking the death penalty in aggravated murder cases. A survey

---

[4]Because of the defects I see in Pierce County's charging policy, I find the majority's "safety valve" argument, distinguishing this case from *State v. Pettitt,* 93 Wn.2d 288, 609 P.2d 1364 (1980), to be irrelevant.

of Pierce County's docket files shows that the prosecutor filed for a special sentencing proceeding in four out of the five aggravated murder cases prosecuted in that jurisdiction since 1981. *See* State v. Petersen, Pierce County cause 85–1–01855–1 (June 17, 1986) (death penalty sought); State v. St. Pierre, Pierce County cause 84–1–00992–8 (May 22, 1985) (death penalty sought); State v. Harris, Pierce County cause 84–1–01190–6 (January 14, 1985) (death penalty sought); State v. Anderson, Pierce County cause 81–1–01368–8 (May 10, 1982) (death penalty not sought); State v. Bartholomew, Pierce County cause 81–1–00579–1 (December 21, 1981) (death penalty sought).

In my dissenting opinion in this court's previous consideration of Harris's case, I cited a number of other aggravated murder cases which dealt with contract killings. *State v. Harris*, 106 Wn.2d 784, 802–06, 725 P.2d 975 (1986), *cert. denied*, 480 U.S. 940 (1987) (Utter, J., dissenting). Although most of those cases were much more egregious than Harris's, in none of them did the prosecution seek the death penalty. To date, Harris has been the only defendant prosecuted under RCW 10.95.020(5) to face a special sentencing procedure. This illustrates the arbitrary nature of the prosecutorial discretion allowed by RCW 10.95.040(1). There is, as well, a link between this discrepancy and Pierce County's charging policy which favors seeking the death penalty in aggravated murder cases.

## II

As a second matter, the majority takes too casual a look at the danger of using constitutionally defective convictions as nonstatutory aggravating factors for the jury's consideration during the special sentencing proceeding. To operate constitutionally, this state's death penalty scheme cannot allow, under any standard of scrutiny, the use of such convictions. The most certain way of assuring the constitutionality of such past convictions is to have the prosecution affirmatively prove their validity.

The use of constitutionally defective convictions or administrative determinations to inform subsequent proceedings violates due process of law. *See, e.g., Burgett v. Texas,* 389 U.S. 109, 19 L. Ed. 2d 319, 88 S. Ct. 258 (1967) (prohibiting use of unconstitutional conviction in habitual criminal sentence enhancement);[5] *United States ex rel. Lasky v. LaVallee,* 472 F.2d 960 (2d Cir. 1973) (same); *State v. Rinier,* 93 Wn.2d 309, 316, 609 P.2d 1358 (1980) (same); *see also United States v. Mendoza–Lopez,* 481 U.S. 828, 95 L. Ed. 2d 772, 107 S. Ct. 2148 (1987) (prohibiting use of constitutionally defective deportation order as an element to prosecution under 8 U.S.C. § 1326 (illegal entry after deportation)).

The use of prior convictions in sentencing enhancement hearings under the habitual criminal statute provides a useful, but incomplete, analogy to the present case. In *State v. Rinier, supra,* this court considered the acceptability of a prior conviction based on a guilty plea containing the blanket statement that defendant was "'advised of his rights and plea of guilty was entered'." We rejected the use of that conviction because the statement concerning its constitutional validity was too vague and incomplete. 93 Wn.2d at 316. In our analysis in that case, we restated that the State has the burden of proving the validity of a prior guilty plea in a habitual criminal proceeding. Such pleas are not presumed to be valid. *See State v. Holsworth,* 93 Wn.2d 148, 154, 607 P.2d 845 (1980).

---

[5]The majority's treatment of *Burgett,* distinguishing that case because defendant Harris had counsel in his prior conviction, misses the point. It is true that the United States Supreme Court found Burgett's previous conviction unusable because in that conviction he was not represented by counsel. *See* 389 U.S. at 115. These, however, are only the particulars of that case. The principle underlying *Burgett* excluded unconstitutional evidence from introduction at trial. *See* 389 U.S. at 114 (discussion of exclusionary rule in relation to other constitutional violations). This principle does not differentiate between the nature of the unusable convictions' unconstitutionality. In this light, the majority's conclusion that *Burgett* is inapplicable to Harris's case—because the constitutional defect here may have been Harris's guilty plea—makes little sense. This is like distinguishing between rotten apples and rotten oranges. It is true they are different kinds of fruit, but they are both rotten.

The analogy is incomplete because, as the United States Supreme Court has put it, "the imposition of death by public authority is . . . profoundly different from all other penalties . . ." *Lockett v. Ohio,* 438 U.S. 586, 605, 57 L. Ed. 2d 973, 98 S. Ct. 2954 (1978). The care taken in habitual criminal proceedings must be amplified in the special sentencing stage of an aggravated murder prosecution. If today's death penalty statutes escape constitutional invalidation, it is because they adhere to the "super due process" required by the United States Supreme Court cases which reshaped the use of this penalty in the 1970's. *See, e.g., Furman v. Georgia,* 408 U.S. 238, 33 L. Ed. 2d 346, 92 S. Ct. 2726 (1972); *Gregg v. Georgia,* 428 U.S. 153, 49 L. Ed. 2d 859, 96 S. Ct. 2909 (1976). In order to comport with these due process requirements, we must take all possible measures to ensure that constitutionally defective information does not inform the sentencing process.

In *State v. Bartholomew, supra,* this court strictly limited the use of nonstatutory factors before the jury during the special sentencing proceeding. While past criminal convictions were one of the few nonstatutory factors allowed by that case, this court certainly did not envision the use of unconstitutional ones. To do otherwise would violate the spirit of that opinion and approach the danger noted in *Henry v. Wainwright,* 661 F.2d 56 (5th Cir. 1981) cited in *State v. Bartholomew,* 98 Wn.2d 173, 195, 654 P.2d 1170 (1982), *State's cert. granted and remanded,* 463 U.S. 1203, *defendant's cert. denied,* 463 U.S. 1212 (1983) (*Bartholomew* I): "By sanctioning consideration of statutory aggravating factors *plus anything else the jury determines to be aggravating,* such an instruction broadens jury discretion rather than channels it and obscures any meaningful basis for distinguishing cases in which the death penalty is imposed from those in which it is not."

The majority's standard for determining the constitutionality of past offenses is too loosely fitted. It leaves open the possibility that constitutionally unusable information

will be used to guide the jury's determination. We must not allow that possibility.

The majority insists that the prior offense here is not an element of a present one—as in a habitual criminal proceeding—but merely one factor for the jury to consider. This is true. Nonetheless, the severe nature of the death penalty and the irreversible dangers inherent in allowing the jury to consider constitutionally defective information more than make up for this difference. The curious disproportionate nature of Harris's death sentence to other contract murder prosecutions causes one to wonder whether the previous conviction may have indeed tipped the scales in favor of death. We should at least be certain that this conviction was constitutionally proper. The burden of proof for this matter should be on the State; the State, after all, sought the death penalty in the first place and sought to use the previous conviction in order to obtain it.

I find serious defects in the way Benjamin Harris was charged with the death sentence and the type of nonstatutory evidence used in the special sentencing proceeding. Because of these defects, I would grant Harris's personal restraint petition.

PEARSON, C.J., concurs with UTTER, J.