**FILE**

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE____SEP 0 5 2013

~~Madsen~~ C. S.
CHIEF JUSTICE



This opinion was filed for record
at 8:00 am on Sept 5, 2013

Ronald R. Carp___
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| Petitioner, | ) | No. 88410-2 |
| | ) | (consolidated with |
| v. | ) | No. 88411-1) |
| JOSEPH T. McENROE, | ) | En Banc |
| Respondent. | ) | |
| | ) | Filed ____SEP 0 5 2013____ . |
| STATE OF WASHINGTON, | ) | |
| Petitioner, | ) | |
| v. | ) | |
| MICHELE KRISTEN ANDERSON, | ) | |
| Respondent. | ) | |

WIGGINS, J.—In this direct review of the trial court's dismissal of notices of special death penalty sentencing proceedings, the King County prosecuting attorney asks us to decide whether he violated Washington's capital punishment statutes by considering the strength of evidence against respondents Joseph McEnroe and Michele Anderson when he determined to seek the death penalty for the shooting deaths of six people. We hold that the prosecuting attorney did not violate the statutory scheme.

RCW 10.95.040(1) directs the prosecutor to "file written notice of a special sentencing proceeding to determine whether or not the death penalty should be imposed when there is reason to believe that there are not sufficient mitigating circumstances to merit leniency." The prosecutor in this case complied with the statute in question by considering mitigating circumstances and determining that there was reason to believe that the mitigating circumstances were not sufficient to merit leniency. That the prosecutor also considered the strength of its case in making this determination is of no consequence. We therefore reverse the trial court and remand with instructions to reinstate the notices of special sentencing proceeding so that the cases against McEnroe and Anderson may proceed to trial.

Because we resolve this case by interpreting RCW 10.95.040, we decline to address the delicate constitutional issue of separation of powers raised by the parties. *Cmty. Telecable of Seattle, Inc. v. City of Seattle*, 164 Wn.2d 35, 41, 186 P.3d 1032 (2008) ("We will avoid deciding constitutional questions where a case may be fairly resolved on other grounds.").

## FACTS AND PROCEDURAL HISTORY

### I. Factual background

In Carnation, Washington, on December 24, 2007, six members of the Anderson family were gunned down in their home: respondent Michele Anderson's parents, Judy and Wayne Anderson; respondent Anderson's brother, Scott, and sister-in-law, Erika Anderson; and respondent's five-year-old niece, Olivia Anderson, and three-year-old nephew, Nathan Anderson. All victims were shot at least once, and Judy, Scott, Erika, and Olivia were shot multiple times in the head and body.

A friend of Judy Anderson's discovered this horrific scene two days later after Judy failed to show for work or respond to phone calls. Police quickly responded. During the investigation, McEnroe and Anderson arrived at the scene. McEnroe and Anderson initially told police that they had gone to Las Vegas to get married on December 24, but, upon police questioning, they changed their story and confessed to the murders.

On December 28, 2007, the State charged Anderson and McEnroe with six counts of aggravated first degree murder. Under RCW 10.95.040, if the prosecuting attorney concluded that there were insufficient mitigating factors to merit leniency, he was required to file a notice of special sentencing proceeding to consider the death penalty no later than 30 days after charging Anderson and McEnroe. The trial court granted a motion to extend this time limit. In January 2008, the prosecutor wrote to defense counsel to extend the time frame for the consideration of mitigating circumstances and asking the defense to submit mitigation materials by April 10, 2008. Following further extensions, in October 2008 the prosecutor filed a notice of special sentencing proceeding to determine whether he would seek the death penalty. At the same time, he released a statement in which he indicated that he was obliged to consider mitigating evidence, but that "[g]iven the magnitude of these alleged crimes, the slaying of three generations of a family, and particularly the slaying of two young children, [he] f[ou]nd that there [were] not sufficient reasons to keep the death penalty from being considered by the [jurors who] will ultimately hear these matters." Clerk's Papers (CP) at 48.

3

II. Pretrial proceedings

Following the prosecutor's notices of special sentencing proceeding, defense counsel began seeking information that formed the basis of the prosecutor's decision-making in this case and in other capital cases. Defense counsel brought numerous motions under various theories to probe the prosecutor's reasons for seeking the death penalty. This hotly contested issue culminated in respondents' November 2012 motion to dismiss notices of special sentencing proceeding, arguing that the prosecutor's consideration of the strength of the evidence against McEnroe and Anderson violated their rights to equal protection of the laws and due process.

In January 2013, the trial court granted the respondents' motion and struck the notices of special sentencing proceeding on two grounds. First, the trial court concluded that the prosecutor violated RCW 10.95.040 by considering the strength of the evidence against McEnroe and Anderson in deciding to file notices of special sentencing proceeding. The trial court reasoned that the prosecutor could consider only the circumstances of the case and the mitigation information, but could not consider the strength of the State's case. Second, the trial court ruled that by considering the strength of evidence, the prosecutor violated equal protection of the law by "seek[ing] varying degrees of punishment when proving identical criminal elements." CP at 605. The trial court based its equal protection ruling on hypothetical defendants whose crimes and mitigating circumstances were identical but against only one of whom the State had strong evidence. Because the strength of the cases against these hypothetically identical defendants would comprise the only reason that one would face the possibility of the death penalty and the other

4

would not, the trial court concluded that considering the strength of evidence violated equal protection. *See id.* at 609 ("In a scenario suggestive of Camus, a defendant's early confession and cooperation could become his downfall.").

## III.  Discretionary and direct review

The State promptly sought discretionary review of the trial court's ruling striking the notices of special sentencing proceeding. The State also moved for accelerated review and to consolidate the cases against each respondent. The Court of Appeals certified the cases for transfer to this court pursuant to RCW 2.06.030(d)[1] and RAP 4.4.[2] We consolidated the cases and granted discretionary review.[3]

## ANALYSIS

We hold that prosecutors may consider the strength of their cases in determining whether to file a notice of special sentencing proceeding seeking the death penalty pursuant to RCW 10.95.040. The statute does not prohibit consideration of the strength of the State's case and as long as prosecutors consider whether there are sufficient mitigating circumstances to merit leniency, they

---

[1] RCW 2.06.030 provides in pertinent part that the Court of Appeals "shall have exclusive appellate jurisdiction in all cases except: . . . (d) cases involving fundamental and urgent issues of broad public import requiring prompt and ultimate determination . . . ."

[2] RAP 4.4 provides in pertinent part that "[t]he Supreme Court, to promote the orderly administration of justice may, . . . upon certification by the Court of Appeals, transfer a case from the Court of Appeals to the Supreme Court . . . ."

[3] While the motion for discretionary review was pending, the trial court denied the State's motion to stay the effective date of the order striking notices of special sentencing proceeding. The trial court also issued a follow-up ruling justifying its initial order striking the notices, struck the trial date, excused jurors, and stayed further proceedings pending the outcome of this discretionary review. The State made an emergency motion in this court requesting the stay of the trial court's ruling striking the notices, which our commissioner granted.

fully comply with their statutory duties. We encourage holistic, individualized prosecutorial assessments in determining whether capital punishment is appropriate in order to fulfill equal protection guaranties and to promote sound public policy. Accordingly, we reverse the trial court and remand this case with instructions to reinstate the notices of special sentencing proceeding.

I. **RCW 10.95.040 requires the prosecutor to determine only whether mitigating circumstances are insufficient to merit leniency**

Our "'fundamental objective in construing a statute is to ascertain and carry out the intent of the legislature.'" *State v. Veliz*, 176 Wn.2d 849, 854, 298 P.3d 75 (2013) (quoting *State v. Morales*, 173 Wn.2d 560, 567, 269 P.3d 263 (2012)). "'We construe the meaning of a statute by reading it in its entirety and consider the entire sequence of all statutes relating to the same subject matter.'" *Id.*

RCW 10.95.040(1) provides:

> If a person is charged with aggravated first degree murder as defined by RCW 10.95.020, the prosecuting attorney shall file written notice of a special sentencing proceeding to determine whether or not the death penalty should be imposed when there is reason to believe that there are not sufficient mitigating circumstances to merit leniency.

This statute requires the prosecutor to make only one determination: whether "there is reason to believe that there are not sufficient mitigating circumstances to merit leniency." *Id.* If the prosecutor believes that mitigating circumstances are insufficient, the prosecutor must file written notice of a special sentencing proceeding.

RCW 10.95.040(1) does not define "mitigating circumstances" or provide any guidance as to when mitigating circumstances are sufficient to merit leniency. But reading the statutory scheme as a whole, we consider other provisions in chapter

10.95 RCW, which also employ the term "mitigating circumstances" in relation to what the jury may consider in a special sentencing proceeding. RCW 10.95.060(4) requires a jury considering the death penalty to answer the question, "'Having in mind the crime of which the defendant has been found guilty, are you convinced beyond a reasonable doubt that there are not sufficient mitigating circumstances to merit leniency?'" RCW 10.95.070 elaborates that, in answering this question, "the jury, or the court if a jury is waived, may consider any relevant factors" in addition to the eight enumerated factors contained in RCW 10.95.070.[4] If the trier of fact "finds that there are not sufficient mitigating circumstances to merit leniency, the sentence

---

[4] These factors include:

      (1) Whether the defendant has or does not have a significant history, either as a juvenile or an adult, of prior criminal activity;

      (2) Whether the murder was committed while the defendant was under the influence of extreme mental disturbance;

      (3) Whether the victim consented to the act of murder;

      (4) Whether the defendant was an accomplice to a murder committed by another person where the defendant's participation in the murder was relatively minor;

      (5) Whether the defendant acted under duress or domination of another person;

      (6) Whether, at the time of the murder, the capacity of the defendant to appreciate the wrongfulness of his or her conduct or to conform his or her conduct to the requirements of law was substantially impaired as a result of mental disease or defect. However, a person found to have an intellectual disability under RCW 10.95.030(2) may in no case be sentenced to death;

      (7) Whether the age of the defendant at the time of the crime calls for leniency; and

      (8) Whether there is a likelihood that the defendant will pose a danger to others in the future.

RCW 10.95.070(1)–.070(8).

shall be death." RCW 10.95.030(2). Thus, we interpret the term "mitigating circumstances" in chapter 10.95 RCW to mean the factors listed in RCW 10.95.070 as well as any relevant factor.

We may also resort to the dictionary definition of "mitigate." *State v. Kintz*, 169 Wn.2d 537, 547, 238 P.3d 470 (2010). The dictionary defines the verb "mitigate" as "to make less severe, violent, cruel, intense, painful." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1447 (2002). Thus, a mitigating circumstance is a circumstance that requires a less severe result. In the capital punishment context, it is reasonable to believe that the legislature intended "mitigating circumstances" to include the eight factors listed in RCW 10.95.070 and any other relevant factor, i.e., those circumstances that require a punishment less severe than death.

II. <u>The prosecutor complied with his statutory duty by making a determination based on whether mitigating circumstances were sufficient to merit leniency</u>

When he decided to seek the death penalty against McEnroe and Anderson, the prosecutor considered mitigation information and determined that there were not sufficient mitigating circumstances to merit leniency. After making this determination, he filed notices of special sentencing proceeding as the statute directed. Accordingly, we hold that the prosecutor fulfilled his duties under RCW 10.95.040.

The prosecutor made clear statements regarding his consideration of mitigating circumstances. In the press release announcing his plans to seek capital punishment, the prosecutor acknowledged that he "has the obligation in potential capital murder cases to consider all relevant information about the crime and to weigh that against any mitigating evidence favoring the charged defendants." CP at

8

48. In performing this weighing exercise, the prosecutor did exactly as instructed by the statute: he found "that there [were] not sufficient reasons to keep the death penalty from being considered" by the jury. *Id.* Furthermore, in response to defense counsel's request for clarification regarding the information the prosecutor considered, the prosecutor indicated that he "considered the facts and circumstances alleged that form[ed] the basis for charging" the respondents and also "considered mitigation materials submitted by defense counsel." *Id.* at 52. Thus, we conclude that the prosecutor did as the statute directed: he considered whether the mitigating circumstances sufficed to merit leniency.

III. Prosecutors may consider the strength of evidence when determining whether to file a notice of special sentencing proceeding

Aside from considering reasons to believe that mitigating circumstances are not sufficient to merit leniency, RCW 10.95.040(1) neither requires nor precludes consideration of any other information. Logically speaking, in making the determination of the sufficiency of mitigating circumstances, prosecutors must realistically consider other factors that weigh against mitigation. Nothing in the statutory language suggests that the strength of the evidence cannot be one of these other factors. Indeed, in many respects it makes good sense for prosecutors to reflect on the strength of their cases before deciding to seek the ultimate punishment.

We have acknowledged the importance of the strength of evidence in the prosecutorial decision to seek the death penalty before. Recently, in *State v. Davis*, we noted, "Mitigating evidence is not the only reason a prosecutor might decide not

to seek the death penalty. The *strength of the State's case often influences that decision.*" 175 Wn.2d 287, 357, 290 P.3d 43 (2012) (emphasis added). Less recently, we "assume[d] that prosecutors exercise their discretion in a manner [that] reflects their judgment concerning the seriousness of the crime or *insufficiency of the evidence.*" *State v. Rupe*, 101 Wn.2d 664, 700, 683 P.2d 571 (1984) (emphasis added). *Davis* and *Rupe* demonstrate that although we have never squarely decided whether prosecutors can weigh the strength of evidence against mitigating circumstances when deciding to file a notice of special sentencing proceeding, we have certainly assumed that they can.

Respondents assert that RCW 10.95.040 mandates that prosecutors consider *only* mitigating circumstances in making the determination to seek the death penalty. The trial court too indicated that the prosecutor should not weigh the strength of the State's case against the mitigating circumstances because mitigation is focused solely on the moral culpability of the defendant. Essentially, these arguments boil down to a requirement that prosecutors consider mitigating circumstances in a vacuum. Such a requirement is illogical for several reasons.

First, as discussed, RCW 10.95.040(1) contains no prohibition on what the prosecutor can consider in making his or her determination to file a notice of special sentencing proceeding. The only statutory requirement is that the prosecutor file the notice when mitigating circumstances are not sufficient to merit leniency. The trial

court and respondents point to no textual prohibition against considering the strength of evidence in deciding whether to seek the death penalty.[5]

Second, the trial court determined and respondents concede that prosecutors may consider the facts and circumstances of the case alongside mitigation evidence. This concession contradicts respondents' theory that the statute mandates that only mitigation evidence be considered. After all, RCW 10.95.040(1) provides no textual authority for the consideration of the facts and circumstances or the strength of evidence. Moreover, the strength of a particular case might very well be a fact or circumstance of the case. In short, if prosecutors can consider the facts and circumstances of the case, it would be anomalous to preclude them from considering the strength of their evidence.

Third, as the State argues, the determination whether to seek the death penalty should require an elected prosecutor "to inform him- or herself as thoroughly and completely as possible." Opening Br. of Pet'r at 34. We agree. Prosecutors, in exercising their executive functions, better serve the public by holistically considering all facts and circumstances related to the crime, which, realistically, include the strength of evidence, rather than forcing tunnel vision. Given the time and expense it takes to prepare and try a capital case, it makes good sense for a prosecutor to seek the death penalty only when the prosecutor believes there is a good chance of obtaining a conviction.

---

[5] Respondents and the trial court believe Washington's capital punishment scheme is unique because it directs prosecutors to consider mitigating circumstances rather than aggravating circumstances in coming to a decision on seeking capital punishment. Yet it remains unclear why the uniqueness of the statute should effect a different statutory interpretation.

We hold that Washington prosecutors may consider the strength of evidence, along with the facts and circumstances of the crime, when they determine whether there are sufficient mitigating circumstances to merit leniency.

IV.  RCW 10.95.040 does not grant prosecutors unfettered discretion or violate the principles of equal protection

Since the inception of the current Washington capital sentencing scheme, we have upheld the statutes' constitutionality despite equal protection challenges that they provide prosecuting attorneys with too much discretion. Today we reaffirm our jurisprudence that prosecutors who make individualized assessments in deciding whether to seek capital punishment do not violate these constitutional principles.

The first "unfettered discretion" challenge came in *State v. Campbell*, 103 Wn.2d 1, 24, 691 P.2d 929 (1984). There, we noted that "equal protection of the laws is denied when a prosecutor is permitted to seek varying degrees of punishment when proving identical criminal elements." *Id.* at 25. But "'no constitutional defect exists when the crimes [that] the prosecutor has discretion to charge have different elements.'" *Id.* (quoting *State v. Wanrow*, 91 Wn.2d 301, 312, 588 P.2d 1320 (1978)). Because prosecutors must consider mitigating circumstances and because only in the absence or insufficiency of such circumstances may prosecutors seek death, we held that RCW 10.95.040(1) was constitutional. *Campbell*, 103 Wn.2d at 25.

We have since expanded on the *Campbell* analysis, requiring prosecutors to "perform individualized weighing of the mitigating factors" and noting that "an inflexible policy is not permitted." *State v. Pirtle*, 127 Wn.2d 628, 642, 904 P.2d 245 (1995); *see also In re. Pers. Restraint of Harris*, 111 Wn.2d 691, 693, 763 P.2d 823

(1988). Thus, in order for a prosecutor to constitutionally exercise discretion when deciding to file notices of special sentencing proceeding, the prosecutor must engage in an individualized weighing of mitigating factors. Because individualized weighing enables prosecuting attorneys to come to a decision tailored to the unique circumstances of every case, there is not standardless discretion and therefore no equal protection violation. *See, e.g., State v. Cross*, 156 Wn.2d 580, 625, 132 P.3d 80 (2006); *State v. Benn*, 120 Wn.2d 631, 671, 845 P.2d 289 (1993); *State v. Bartholomew*, 104 Wn.2d 844, 848-49, 710 P.2d 196 (1985); *Rupe*, 101 Wn.2d at 700.

In striking the notices of special sentencing proceeding on the basis of equal protection, the trial court did not engage in the above analysis based in our case law, but instead set forth the following hypothetical:

> Consider two defendants who separately commit identical offenses in King County, Washington. The first defendant commits his offense in a jurisdiction that has ample resources and an excellent investigation unit. As a result, the evidence in that case is substantial and the case against that defendant is strong on the merits. The second defendant, however, commits his offense in a jurisdiction that has fewer resources and an undertrained, overtaxed police force. The evidence in that case is comparatively sparse, and the case against that defendant is weak on the merits. Both defendants are subsequently charged with aggravated murder in the first degree. Both defendants submit identical evidence of mitigation to the prosecutor. The prosecutor declines to file the notice of intent as to the second defendant but does file the notice as to the first. The difference in the result has nothing whatsoever to do with individual moral culpability of the respective defendants but hinges rather on the wholly unrelated factor of the strength of the evidence in the State's case as to guilt. In this hypothetical, insufficiency of proof of mitigation was clearly not the consideration guiding the prosecutor's discretion . . . .

CP at 622. This hypothetical unrealistically assumes that there are two identical crimes and two identical defendants and thereby forecloses the possibility of an individualized assessment by asking us to assume everything is equal except for the strength of the evidence at hand. Thus, the hypothetical does not illustrate a realistic equal protection violation but demonstrates exactly why we require individualized determinations from our prosecuting attorneys. In reality, prosecutors must make individual assessments by looking at the crime, the mitigation packet, the strength of evidence, the desires of surviving family members, and many other factors governing the ultimate decision to seek capital punishment. Only by engaging in such a multifaceted, individualized consideration do prosecuting attorneys comply with the equal protection clause.

## CONCLUSION

The King County prosecuting attorney followed the statutory requirements when he considered whether mitigating circumstances merited leniency and when he determined that they did not. The fact that he also considered the strength of the case is inconsequential. Indeed, holistic assessments that take into account various mitigating circumstances, the facts of the case, and the strength of evidence are just the type of individualized determinations we require of our prosecutors. Without a flexible weighing of various factors, prosecutors likely would make standardless decisions that violate equal protection principles. For these reasons, we reverse the trial court and remand this matter with instructions to reinstate the notices of special sentencing proceeding so that the capital prosecutions against McEnroe and Anderson may finally proceed to trial.

Wiggins, J.

WE CONCUR.

Madsen, C.J.

Johnson, J.

Owens, J.

Fairhurst, J.

J.M. Johnson, J.

Stephens, J.

González, J.

Alexander McCloud, J.