# FILE

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE    NOV 1 4 2013



CHIEF JUSTICE

This opinion was filed for record
at 8:00 am on Nov. 14, 2013

for Ronald R. Carpenter
Supreme Court Clerk

## IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | |
| Petitioner/Cross-Respondent, | ) | No. 88522-2 |
| | ) | |
| v. | ) | En Banc |
| | ) | |
| CHRISTOPHER JOHN MONFORT, | ) | |
| | ) | |
| Respondent/Cross-Petitioner. | ) | |
| | ) Filed | NOV 1 4 2013 |

OWENS, J. -- The King County prosecuting attorney charged Christopher Monfort with one count of aggravated first degree murder for the death of a law enforcement officer. He then filed a notice of special sentencing proceeding (hereinafter "death penalty notice") pursuant to RCW 10.95.040(1). The statute provides, "If a person is charged with aggravated first degree murder . . . , the prosecuting attorney shall file written notice of a special sentencing proceeding to determine whether or not the death penalty should be imposed when *there is reason to believe that there are not sufficient mitigating circumstances to merit leniency.*" RCW 10.95.040(1) (emphasis added). Monfort's defense (hereinafter "the defense") moved to strike the notice on the basis that the county prosecutor considered the facts

of the crime and lacked a factual basis for making a determination under the statute. The trial court denied the defense's motion on the first basis but granted it on the second. It stated that the county prosecutor had failed to exercise discretion as required by constitutional and statutory law. The State moved for discretionary review, as did the defense, and we granted review. After considering the parties' arguments, we reverse the trial court. Furthermore, we hold that a county prosecutor may consider the facts of the crime when deciding whether to file a death penalty notice, and the judiciary may review only whether a prosecutor has a "reason to believe that there are not sufficient mitigating circumstances" under RCW 10.95.040(1).

## ISSUES

I. Did the trial court err in not striking the death penalty notice because the county prosecutor considered the facts of the crime?

II. Did the trial court err in striking the death penalty notice because the county prosecutor did not consider enough mitigation evidence?

## FACTUAL AND PROCEDURAL HISTORY

A person is guilty of aggravated first degree murder if he or she commits first degree murder involving one or more statutory aggravating factors (e.g., a victim who was serving as a law enforcement officer). RCW 10.95.020(1). In November 2009, the King County prosecuting attorney charged Monfort with one count of aggravated

first degree murder for the death of a law enforcement officer as well as one count of first degree arson and three counts of first degree attempted murder. In December 2009, the superior court arraigned Monfort. Absent a showing of good cause, Washington statutory law requires a county prosecutor to file and serve a death penalty notice within 30 days after arraignment (here, January 13, 2010). RCW 10.95.040(2). If a county prosecutor fails to give timely notice, he or she may not seek the death penalty. RCW 10.95.040(3). Moreover, before a county prosecutor can file a death penalty notice, he or she must determine whether "there is reason to believe that there are not sufficient mitigating circumstances to merit leniency." RCW 10.95.040(1).

On the day of arraignment, the county prosecutor sent the defense an offer to extend the 30-day filing period to six months (June 2010), requested that defense counsel submit his mitigation materials in five months for review, and invited defense counsel to discuss the prosecutor's decision two weeks before the deadline. The defense agreed, and the trial court extended the statutory filing deadline to June 2010.

In February 2010, the defense wrote the prosecutor that it did not expect to meet the deadline because the American Bar Association's *Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases* (2003) required it to exhaustively investigate Monfort's life. It explained that Monfort's age (41), lack of criminal history, and residency in multiple states complicated the

investigation. In April 2010, the defense moved to extend the filing deadline to December 2010. It argued that it needed more time to complete a mitigation investigation that would meet standards of effective assistance of counsel and the ABA *Guidelines*. At a hearing, the trial court noted that ex parte status reports showed that the defense and prosecution were investigating expeditiously. Notably, the defense stated that it would not share any mitigation evidence with the prosecution by the current deadline. In the end, the trial court ordered the defense to meet with the county prosecutor and set a follow-up status conference.

In May 2010, the defense met with the prosecution twice (but not the county prosecutor himself) and reaffirmed its position not to share mitigation evidence until its investigation was complete. Ultimately, the county prosecutor acknowledged the defense's challenges and met it halfway by agreeing to extend the deadline by three months (to September 2010) and asking the defense to submit its mitigation evidence by August 2010. The county prosecutor also renewed his offer to meet with the defense before making his decision. The defense refused to promise to give the prosecution a "competent mitigation package" by August 2010. Clerk's Papers at 138. In response, the prosecution asked the defense to provide any mitigation evidence in its possession at that time. The defense then revealed that issues with funding and experts had delayed the start of its investigation until April 2010. The trial court extended the statutory filing deadline to September 2010.

4

In July 2010, the defense informed the prosecution it would not meet the August deadline and renewed its request for a December deadline. The prosecution acknowledged that the defense was refusing to provide any mitigation evidence by the August deadline, noted it had shared evidence, including evidence gathered by its private investigator, and declined to agree to an extension. The defense replied that it regretted that the prosecution would not afford it time to complete a mitigation package that met the ABA *Guidelines* and noted that it had interviewed 14 acquaintances, friends, and relatives of Monfort and gathered information from 5 states, but that it needed to interview 40 more persons in 15 states.

In August 2010, the defense again moved to extend the filing deadline to December 2010. The prosecution opposed the motion but reiterated that it would consider the defense's mitigation evidence at any time. The trial court denied the defense's motion. The defense sought discretionary review in this court, which was denied. In September 2010, the county prosecutor filed a death penalty notice.

Almost two years later the defense moved to strike the death penalty notice. Among other things, the defense argued that the notice should be struck because the county prosecutor had insufficient facts to make a determination under RCW 10.95.040(1) and because the county prosecutor considered the facts of the crime when making his determination under the same. The trial court held a hearing on the motions in October 2012. In January 2013, the defense stated it would share its

mitigation package with the prosecution the following month. (In its brief to this court, the prosecution stated that it had not received the defense's mitigation package as of April 2013.)

In February 2013, the trial court announced its ruling. The trial court denied the defense's motion to strike the death penalty notice because the county prosecutor considered the facts of the crime. As for the other motion, the trial court made four determinations: (1) the defense had consistently maintained that it was preparing a mitigation package for the penalty phase and for the prosecutor's determination whether to file a death penalty notice; (2) the prosecutor knew the defense was not developing its mitigation package to delay the fact-finding investigation; (3) the court assured the prosecutor that the defense was proceeding to develop its mitigation package in accordance with the ABA *Guidelines*; and (4) the prosecutor "relied upon a flawed, practically useless mitigation investigation prepared by its own investigator." Verbatim Report of Proceedings (VRP) (Feb. 22, 2013) at 33-34. The trial court then concluded that the county prosecutor "failed both to exercise the discretion it is statutorily and constitutionally obliged to exercise" and struck the death penalty notice.[1] *Id.* at 34-35. In February 2012, the trial court clarified that it had not reviewed the State's private investigation but had instead based its ruling on the defense's brief and attachments in support of the defense motion from July 20, 2012,

---

[1] In March 2013, the trial court issued written orders on the motions and rested on its reasoning at the February hearing.

6

and the State's response brief from September 6, 2012. In March 2013, the prosecution moved for discretionary review by this court, as did the defense, and we granted discretionary review.

## STANDARD OF REVIEW

We review questions of statutory interpretation as well as constitutional law de novo. *State v. Bradshaw*, 152 Wn.2d 528, 531, 98 P.3d 1190 (2004). Yet, while the parties agree that our review is de novo, Monfort contends de novo review in this case means that we should review the *county prosecutor's* decision de novo, including examining the evidence in front of him, even if such information was not before the trial court. Monfort's contention is not well taken. When we review a trial court's decision de novo, we review the facts in front of the trial court; we do not consider evidence outside the record. *See In re Disciplinary Proceeding Against Turco*, 137 Wn.2d 227, 245-46, 970 P.2d 731 (1999) (stating that de novo review does not mean that the court holds a new evidentiary hearing); *State v. Armenta*, 134 Wn.2d 1, 9, 948 P.2d 1280 (1997) (stating that de novo review is limited to the legal conclusions the trial court drew from its findings of fact). Accordingly, our review is limited to the trial court record.

## ANALYSIS

We review (I) the trial court's denial of the motion to strike because the county prosecutor considered the facts of the crime and (II) the trial court's grant of the

motion to strike because the county prosecutor did not consider enough mitigation evidence.

*I. The Trial Court Correctly Denied the Motion To Strike the Death Penalty Notice Because the County Prosecutor Considered the Facts of the Crime*

On cross appeal Monfort argues that a county prosecutor may not consider the facts of the crime under RCW 10.95.040(1). The trial court below disagreed with this argument and dismissed the defense's motion to strike the death penalty notice on these grounds. Monfort claims this was legal error. He is incorrect.

We construe statutes to ascertain and carry out the legislature's intent. *State v. Morales*, 173 Wn.2d 560, 567, 269 P.3d 263 (2012). To construe a statute, we examine the whole statute "and consider the entire sequence of all statutes relating to the same subject matter." *Id.* More broadly, we consider all statutes relating to the same subject matter, pursuant to the principle of reading statutes in pari materia. *Hallauer v. Spectrum Props., Inc.*, 143 Wn.2d 126, 146, 18 P.3d 540 (2001). Here, the plain language of RCW 10.95.040(1) refers to the facts of the crime at two points. First, the statute applies only if a person is charged with "aggravated first degree murder." RCW 10.95.040(1). Thus, a county prosecutor must consider the facts of the crime to determine whether the statute applies at all. Second, the statute requires a county prosecutor to consider "mitigating circumstances." *Id.* Because the term is statutorily undefined, we resort to a dictionary definition for clarification. *State v. Kintz*, 169 Wn.2d 537, 547, 238 P.3d 470 (2010). The dictionary defines the verb

"mitigate" as "to make less severe, violent, cruel, intense, [or] painful." WEBSTER'S

THIRD NEW INTERNATIONAL DICTIONARY 1447 (2002). Thus, the term means either

to lessen the penalty or to lessen the crime with the same result (i.e., lessening the

penalty). From the plain language of RCW 10.95.040(1) it follows that a county

prosecutor may consider the facts of the crime being mitigated or lessened. Indeed, it

would be illogical and contrary to common sense for a county prosecutor to consider

mitigating circumstances in a vacuum.

Other provisions in chapter 10.95 RCW also indicate that a county prosecutor

may consider the facts of the crime. For instance, RCW 10.95.060(4) directs the jury

to consider "'the crime'" when considering mitigating circumstances. And RCW

10.95.070 provides the jury with a nonexhaustive list of mitigating factors to consider,

including possible facts of the crime. RCW 10.95.070(2)-(7). Thus, the plain

language of other provisions in chapter 10.95 RCW indicates that the legislature

intended that the facts of the crime be considered when evaluating mitigating

circumstances under RCW 10.95.040(1). Furthermore, our case law suggests that a

county prosecutor may consider the facts of the crime under RCW 10.95.040(1). *See,

e.g., In re Pers. Restraint of Harris*, 111 Wn.2d 691, 694, 763 P.2d 823 (1988) (noting

that the statutory mitigating factors relate to the crime itself); *State v. Rupe*, 101

Wn.2d 664, 699-700, 683 P.2d 571 (1984) (upholding RCW 10.95.040(1) in part

because it allows prosecutors to consider the "seriousness of the crime"). In sum, the

plain language of the statute and related statutes and our case law all support

concluding that a county prosecutor may consider the facts of the crime under RCW

10.95.040(1). Accordingly, we affirm the trial court's denial of the motion to strike.

*II. The Trial Court Errantly Struck the County Prosecutor's Death Penalty Notice*

Our review of the trial court's decision to grant the other motion to strike the

death penalty notice revolves around (A) whether a county prosecutor must complete

an exhaustive investigation of mitigating circumstances and (B) whether the county

prosecutor in this case properly exercised his discretion.

  *A. A County Prosecutor Does Not Have To Complete an Exhaustive Investigation*
     *of Mitigating Circumstances Before Filing a Death Penalty Notice*

Monfort argues that a county prosecutor is required to conduct the same level

of investigation when determining whether to file a death penalty notice as the

defense is required to conduct when preparing for the penalty phase of a capital case.

The trial court appeared to agree because it held the prosecution's investigation to the

standard governing the defense's investigation and struck the death penalty notice, in

part, for the prosecution's failure to meet it. The plain language of RCW 10.95.040(1)

and our case law show that the defense and trial court are incorrect.

The ultimate focus of the defense's investigation into mitigation evidence is the

penalty phase of trial, when the jury confronts the question of whether it is

"'*convinced beyond a reasonable doubt* that there are not sufficient mitigating

circumstances to merit leniency.'" RCW 10.95.060(4) (emphasis added). Naturally,

the defense's aim is to prevent the jury from being convinced beyond a reasonable doubt that there are not sufficient mitigating circumstances. In contrast, a prosecution's investigation into mitigation evidence initially focuses on the question of whether to file a death penalty notice, where he or she must determine whether "there is *reason to believe* that there are not sufficient mitigating circumstances to merit leniency." RCW 10.95.040(1) (emphasis added). Under the plain language of RCW 10.95.040(1), a county prosecutor does not have to be convinced beyond a reasonable doubt that there are not sufficient mitigating circumstances to merit leniency. Since a county prosecutor does not have to be convinced beyond a reasonable doubt, it follows both that he or she does not have to investigate mitigating circumstances to that extent and thus does not have to perform the same degree of investigation as the defense. Similarly, a county prosecutor's investigation does not have to comply with the ABA *Guidelines* and standards of effective assistance of counsel such as those found in *Wiggins v. Smith*, 539 U.S. 510, 522-35, 123 S. Ct. 2527, 156 L. Ed. 2d 471 (2003), because those standards apply only to the defense. Although Monfort argues to the contrary, he provides no legal support for the conclusion that such standards somehow apply to the prosecution, which has no attorney-client relationship with the defendant.

The trial court concluded that a county prosecutor's death penalty notice decision must rest on "full mitigation information" under this court's case law. VRP

(Feb. 22, 2013) at 27-30. The trial court drew this conclusion from *State v. Pirtle*, 127 Wn.2d 628, 904 P.2d 245 (1995). Among other things, *Pirtle* stands for the proposition that a county prosecutor has a sufficient basis for determining whether to file a death penalty notice when the defendant's criminal history provides information on most of the statutory mitigating factors provided under RCW 10.95.070, notwithstanding input from the defense. 127 Wn.2d at 642-43. It does not, however, provide that less information renders the prosecutor's decision an abuse of discretion. Besides, the plain language of RCW 10.95.070 provides that the list of factors is nonexhaustive. Thus, RCW 10.95.070 is not a recipe for full mitigation information, whatever that may be, and the trial court's reading of *Pirtle* is incorrect. In sum, the plain language of RCW 10.95.040(1) and our case law do not demonstrate that a county prosecutor must complete an exhaustive investigation of mitigating circumstances. A county prosecutor's investigation satisfies RCW 10.95.040(1) so long as it enables him or her to determine whether "there is reason to believe that there are not sufficient mitigating circumstances to merit leniency."

B. *The County Prosecutor Properly Exercised His Discretion To File a Death Penalty Notice*

As stated above, the trial court below held that the county prosecutor failed to exercise his discretion in accordance with constitutional and statutory law. We disagree.

12

When a county prosecutor determines whether "there is reason to believe that there are not sufficient mitigating circumstances to merit leniency" under RCW 10.95.040(1), he or she is constitutionally required to "perform individualized weighing of the mitigating factors" and may not adopt "an inflexible policy." *Pirtle,* 127 Wn.2d at 642. Here, the trial court ostensibly concluded that the county prosecutor had adopted an inflexible policy because he decided not to continue to wait for the defense's mitigation evidence. To the extent that the trial court made this conclusion, its ruling is legal error. In *Pirtle,* on the day the county prosecutor brought charges against the defendant, he announced his intent to file a death penalty notice. But he offered to wait 30 days to file and specifically cautioned that he would consider the defense's mitigating evidence during that time. *Id.* at 641-42. The county prosecutor adhered to the deadline and filed the notice without the benefit of the defense's evidence. *Id.* at 642. This court held that the county prosecutor's willingness to wait 30 days and consider any mitigating evidence during that time demonstrated an individualized approach. *Id.* In this case, the county prosecutor ultimately agreed to wait about nine months before filing a death penalty notice, explicitly stated he would consider the defense's mitigation evidence at any time and meet with the defense, and even suggested he might ask the trial court to strike the notice if the defense presented sufficient evidence after he filed. Set against *Pirtle,*

13

the county prosecutor's policy was flexible and individualized as constitutionally required, and the trial court's ruling to the contrary was legal error.

As for statutory compliance, the trial court essentially held that the county prosecutor abused his discretion under RCW 10.95.040(1) because (1) he did not have reason to believe the defense had insufficient mitigation evidence and (2) he did not consider a full mitigation package. These determinations by the trial court do not demonstrate that the county prosecutor failed to properly exercise his discretion under the statute. Moreover, the trial court's ruling ignores the subjective nature of the decision to file a death penalty notice.

The first determination does not support the trial court's legal conclusion for two reasons. First, receiving mitigation evidence from the defense is "normally desirable," *Pirtle*, 127 Wn.2d at 642, but not required by the plain language of the statute, *see supra* part II.A. Therefore, the county prosecutor did not abuse his discretion merely by choosing not to wait for the defense to share what information it possessed. Second, the record shows the county prosecutor had reason to believe that the defense had insufficient mitigation evidence. The prosecutor explained to the trial court that he understood the defense's recalcitrance to mean one of two things: either the defense did not want to show the prosecution its evidence before trial or it had insufficient mitigating evidence. The defense responded that it had decided not to share its evidence for both reasons. Thus, the defense's response gave rise to a reason

14

to believe that there were not sufficient mitigating circumstances to merit leniency. And the trial court's assurances that the defense was preparing a mitigation package in accordance with the ABA *Guidelines* does not preclude the county prosecutor from concluding that the defense's future mitigation evidence would also be insufficient.

The second determination—that the county prosecutor did not consider a full mitigation package—also does not support the trial court's legal conclusion for two reasons. First, as explained in part II.A, a county prosecutor does not have to consider a full mitigation package under the statute. Second, this case is very similar to *Pirtle*, where this court held that the county prosecutor had sufficient information to make a determination under the statute, 127 Wn.2d at 642-43. In *Pirtle*, the county prosecutor's information allowed him to draw conclusions "about each of the statutory mitigating factors, with the possible exception of the Defendant's mental state at the time of the crime." *Id.* at 643. Here, the facts of the crime and Monfort's criminal history allowed the county prosecutor to draw conclusions about five and possibly six of the eight statutory mitigating factors. *See* RCW 10.95.070(1) (criminal history), (3) (consent), (4) (minor accomplice), (5) (duress), (7) (age), and (8) (risk of future danger). As in *Pirtle*, the exception appears to be Monfort's mental state at the time of the crime. *See id.* at (2) (mental disturbance), (6) (mental disease). Thus, the county prosecutor exercised his discretion in accordance with our statutory and case law. Accordingly, we reverse the trial court's grant of the motion to strike.

The foregoing analysis demonstrates that the county prosecutor's decision comported with constitutional requirements, RCW 10.95.040(1), and *Pirtle*. But what it leaves out, and what calls for emphasis, is that a county prosecutor's death penalty notice decision is a "subjective determination." *Harris*, 111 Wn.2d at 694; *see State v. Campbell*, 103 Wn.2d 1, 25 n.1, 691 P.2d 929 (1984) ("The judge or jury at the sentencing phase must be free to consider any individual circumstances which would argue against imposition of the death penalty."); *Rupe*, 101 Wn.2d at 700 ("The courts may assume that prosecutors exercise their discretion in a manner which reflects their judgment concerning the seriousness of the crime or insufficiency of the evidence."). RCW 10.95.040(1) requires only that the county prosecutor have "reason to believe that there are not sufficient mitigating circumstances to merit leniency" before filing a death penalty notice. As we have thoroughly established, the statute does not require that the county prosecutor base his or her determination on a checklist of mitigating factors or according to guidelines, which might be put under objective scrutiny. Nor does it require that a judge or defense share a county prosecutor's belief. In this case, the trial court intruded upon the county prosecutor's determination by going beyond the question of whether the county prosecutor had his reasons to hold him to a higher standard, which formed the basis of his ruling. In future cases, courts should restrict their review to this reason-to-believe standard, as such a course of review is consistent with the plain language of the statute and the judiciary's authority to review for

16

statutory compliance. *See State v. Dearbone*, 125 Wn.2d 173, 883 P.2d 303 (1994) (reviewing a county prosecutor's failure to abide by the time limit in RCW 10.95.040).

## CONCLUSION

We make four holdings. We hold that a county prosecutor may consider the facts of a crime as a mitigating circumstance or lack thereof under RCW 10.95.040(1). We hold that a county prosecutor does not have to complete an exhaustive investigation of mitigating circumstances before filing a death penalty notice. We hold that the county prosecutor in this case properly exercised his discretion to file a death penalty notice. And we hold that the trial court improperly intruded upon that subjective determination when it held the prosecutor to a higher standard. Accordingly, the death penalty notice against Monfort is reinstated, and the matter is remanded to the trial court for proceedings consistent with this opinion.

WE CONCUR:

No. 88522-2

GORDON McCLOUD, J. (concurring)—The majority begins with the assumption that the judiciary has the power to review whether a prosecutor's decision to file a notice of special sentencing proceeding complies with RCW 10.95.040 and constitutional requirements. I agree.[1] The majority continues that the prosecutor's decision to consider "the facts of the crime" in Christopher Monfort's case complied with that statute. I agree with that conclusion, too. RCW 10.95.040(1) gives the prosecutor the discretion to file a notice of special sentencing proceeding after considering the factors listed in that statute; properly interpreted, that statute requires the prosecutor to consider mitigating factors in context; and

---

[1] The judiciary certainly has the power and duty to review executive, like legislative, acts, to determine their constitutionality. *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177, 2 L. Ed. 60 (1803) ("It is emphatically the province and duty of the judicial department to say what the law is. . . . If two laws conflict with each other, the courts must decide on the operation of each."). Specifically, the judiciary has the power and duty to review executive action for compliance with statutory mandates. *Harmon v. Brucker*, 355 U.S. 579, 581-82, 78 S. Ct. 433, 2 L. Ed. 2d 503 (1958).

context includes the evidence of the crime. Indeed, that is precisely the conclusion this court just reached in *State v. McEnroe*, No. 88410-2 (Wash. Sept. 5, 2013).

The majority then states that the courts have the power to review whether the prosecutor conducted a sufficient background investigation before deciding to file a notice of special sentencing proceeding and that the prosecutor in this case did so. I agree with those conclusions, too. The majority, however, writes more broadly than that, by stating that we must uphold the filing of a death notice whenever the prosecutor states that he or she *subjectively* believes that "'there are not sufficient mitigating circumstances to merit leniency.'" Majority at 13, 14 (quoting RCW 10.95.040(1) and referencing "the subjective nature of the decision to file a death penalty notice"). I write separately because RCW 10.95.040(1)'s plain language actually contains an objective standard. It requires not just that the prosecutor subjectively believe that there are not sufficient mitigating circumstances to merit leniency before seeking the death penalty but also that the prosecutor's subjective decision on that point be objectively reasonable.

RCW 10.95.040(1) states, "If a person is charged with aggravated first degree murder as defined by RCW 10.95.020, the prosecuting attorney shall file written notice of a special sentencing proceeding to determine whether or not the death penalty should be imposed *when there is reason to believe* that there are not

2

sufficient mitigating circumstances to merit leniency." (Emphasis added.) As both

the United States Supreme Court and Washington courts have consistently

recognized, the "reason to believe" standard is an *objective* standard.[2]

The State argues that in *In re Personal Restraint of Lord*, 123 Wn.2d 296, 868

P.2d 835 (1994), this court held that RCW 10.95.040(1)'s "reason to believe"

requirement established a purely subjective standard. Wash. Supreme Court oral

argument, *State v. Monfort*, No. 88522-2 (June 27, 2013), at 38 min., 4 sec., *audio

recording by* TVW, Washington State's Public Affairs Network, available at

---

[2] *United States v. Mendenhall*, 446 U.S. 544, 554-55, 100 S. Ct. 1870, 64 L. Ed. 2d (1980)
(whether "reasonable person would have believed that he was not free to leave" depends
on objective facts surrounding encounter with law enforcement); *Cowell v. Good
Samaritan Cmty. Health Care*, 153 Wn. App. 911, 925, 225 P.3d 294 (2009) (Health Care
Quality Improvement Act of 1986, 42 U.S.C. § 11112(a)(1), sets forth "objective" standard
where it requires that action be taken "'in the reasonable belief that [it] was in the
furtherance of quality health care'"); *State v. Holmes*, 108 Wn. App. 511, 519, 31 P.3d 716
(2001) ("whether officers reasonably believe in third person's authority to consent [to
search] is judged against an objective standard"); *State v. Sheldon*, 38 Wn. App. 195, 197-
98, 684 P.2d 1350 (1984) (instruction permitting jury "to find knowledge if you find that
the defendant has information which would lead a reasonable person in the same situation
to believe that [certain] facts exist" permitted jury to apply an "objective standard"); *see
Illinois v. Rodriguez*, 497 U.S. 177, 188, 110 S. Ct. 2793, 111 L. Ed. 2d 148 (1990)
(determination whether "'the facts available to the officer at the moment [would] warrant
a man of reasonable caution in the belief that the consenting party had authority over the
premises" is an "objective standard'" (internal quotation marks omitted) (quoting *Terry v.
Ohio*, 392 U.S. 1, 21-22, 88 S. Ct. 1868, 20 L. Ed. 2d 148 (1968))); *Baldwin v. Sisters of
Providence in Wash., Inc.*, 112 Wn.2d 127, 130, 769 P.2d 298 (1989) (in action for
wrongful termination, "requirement that the just cause determination be reasonable"
establishes an objective standard).

http://www.tvw.org. On this basis, the State contends that reviewing the prosecutor's charging decision would invade his personal thought processes and violate work product protections. *Id.* at 9 min., 35 sec.

It is true that in *Lord* this court characterized RCW 10.95.040(1) as mandating a "subjective determination." *Lord*, 123 Wn.2d at 305 ("[t]he decision to impose the death penalty requires the prosecutor to make the 'subjective determination of whether there is reason to believe that there are not sufficient mitigating circumstances to merit leniency'" (internal quotation marks omitted) (quoting *In re Pers. Restraint of Harris*, 111 Wn.2d 691, 694, 763 P.2d 823 (1988))). However, neither *Lord* nor *Harris*—the case on which *Lord* relied for that characterization— required the court to determine whether RCW 10.95.040(1)'s "reason to believe" standard had been satisfied. In *Lord*, the petitioner argued that the prosecutor had failed to exercise *any* of the discretion required under the statute, instead filing the death penalty notice "automatically." *Id.* at 304. In *Harris* the petitioner challenged the prosecutor's policy of seeking the death penalty in every aggravated first degree murder case unless the defendant brought evidence of mitigating circumstances to the State's attention. *Harris*, 111 Wn.2d at 693. Neither petitioner challenged the objective reasonableness of the prosecutor's belief "that there [were] not sufficient mitigating circumstances to merit leniency." RCW 10.95.040(1). Thus, this court's

passing references in *Harris* and *Lord* to the "subjective" nature of the "reason to believe" determination are dicta.[3]

Those references must not be treated as controlling interpretations of RCW 10.95.040(1) for two reasons. First, proper statutory interpretation must begin with the language of the statute. The language at issue here is the phrase "reason to believe" in RCW 10.95.040(1). As discussed above, in every other context that phrase is always construed as imposing an objective, reasonable person, standard. The legislature is presumed to be aware of such prior interpretations when it incorporates such a term of art into a statute, as it did in 1981 when it enacted RCW 10.95.040(1). *See Gimlett v. Gimlett*, 95 Wn.2d 699, 702, 629 P.2d 450 (1981). Any implication to the contrary in *Lord* is inconsistent with the statute's plain language.

Second, as a practical matter it makes far more sense to interpret RCW 10.95.040(1) as establishing an objective standard than as establishing a purely

---

[3] Indeed, in *Harris* this court did not even suggest that the prosecutor's decision under RCW 10.95.040(1) is *purely* subjective. Rather, it stated that the determination of whether there is "'reason to believe that there are not sufficient mitigating circumstances to merit leniency'" is "more subjective" than the decision whether to file habitual criminal charges, since the latter rests primarily on "matters of public record." *Harris*, 111 Wn.2d at 693-94 (quoting RCW 10.95.040(1)). It was on this passage from *Harris* that the *Lord* court relied when it stated that "[t]he decision to impose the death penalty requires the prosecutor to make [a] 'subjective determination.'" *Lord*, 123 Wn.2d at 305 (quoting *Harris*, 111 Wn.2d at 694).

5

subjective one. Indeed, the State cannot even charge a misdemeanor crime like trespass without establishing probable cause based on a reviewable, objective standard. It would be anomalous to let a prosecutor file a death penalty notice with less objective justification. Further, it would be difficult for a court to review a prosecutor's subjective beliefs without invading his or her thought processes, confidentiality, and work product. But courts review decisions based on the objective criterion of reasonableness in a wide variety of contexts. Courts review, for example, whether there was "reasonable suspicion" to stop a suspect. *State v. Larson*, 93 Wn.2d 638, 644-45, 611 P.2d 771 (1980) (citing *Delaware v. Prouse*, 440 U.S. 648, 653-55, 99 S. Ct. 1391, 59 L. Ed. 2d 660 (1979)). Courts review whether a civil defendant's actions met the "reasonable person" standard. *Ranger Ins. Co. v. Pierce County*, 164 Wn.2d 545, 553, 192 P.3d 886 (2008) (municipality is negligent if it fails to exercise "'that care which an ordinarily reasonable person would exercise under the same or similar circumstances'" (quoting *Berglund v. Spokane County*, 4 Wn.2d 309, 315, 103 P.2d 355 (1940))); *Rosendahl v. Lesourd Methodist Church*, 68 Wn.2d 180, 182, 412 P.2d 109 (1966) (test for contributory negligence is whether plaintiff "'exercised that reasonable care for his own safety which a reasonable man would have used under the existing facts and

circumstances'" (quoting *Heinlen v. Martin Miller Orchards, Inc.*, 40 Wn.2d 356,

360, 242 P.2d 1054 (1952))).[4]

Reviewing similar filing decisions at the charging stage is routine, not

anomalous. Our court, for example, has reviewed a prosecutor's blanket policy of

charging an enhanced penalty in every case without exercising discretion—at the

charging stage. *State v. Pettitt*, 93 Wn.2d 288, 296, 609 P.2d 1364 (1980) ("this

fixed formula . . . constitutes an abuse of the discretionary power lodged in the

prosecuting attorney"). Our court has reviewed the sufficiency of factual allegations

to support an information—also at the charging stage. *State v. Knapstad*, 107 Wn.2d

346, 347, 729 P.2d 48 (1986). Courts review charging decisions, at the charging

stage, for compliance with timing rules. *State v. Dearbone*, 125 Wn.2d 173, 178,

883 P.2d 303 (1994) ("[t]his court will review de novo the trial court's finding of

good cause [to reopen the period for service of notice of special sentencing

proceeding] under RCW 10.95.040").[5]

---

[4] Similarly, fact finders review whether a defendant claiming self-defense had a "reasonable belief" that he or she was in imminent danger. *State v. Bradley*, 141 Wn.2d 731, 737, 10 P.3d 358 (2000); *accord State v. Walker*, 136 Wn.2d 767, 772, 966 P.2d 883 (1998) ("person relying on the self-defense claim must have had a *reasonable* apprehension of great bodily harm" (citing *State v. Janes*, 121 Wn.2d 220, 237, 850 P.2d 495 (1993))).

[5] The judiciary also has the power and duty to review charging decisions at later stages of the case. *E.g., State v. Kjorsvik*, 117 Wn.2d 93, 97-102, 812 P.2d 86 (1991) (to meet

Reviewing similar filing decisions at the charging stage is not burdensome. A defendant's argument that the prosecutor lacks "reason to believe" under RCW 10.95.040(1) is analogous to a *Knapstad* challenge, which alleges that the facts supporting the charging document are insufficient as a matter of law to sustain a conviction. *Knapstad*, 107 Wn.2d at 347. The procedure for addressing a *Knapstad* challenge thus provides a good template for how a challenge under RCW 10.95.040(1) should proceed. With a *Knapstad* challenge, the courts rely on a short and simple statement of the facts, usually the prosecutor's certification for determination of probable cause. With an RCW 10.95.040(1) challenge, the courts can do essentially the same thing. The State's presentation need not be sworn by the prosecutor.[6] Following *Knapstad*, it need not be extensive. *See id.* at 356. And in light of the language, purpose, and context of RCW 10.95.040(1), the statement's description of the prosecutor's mitigating factors inquiry need not meet the same standard as that expected of the defense counsel. The State's affidavit must, however, show that the prosecutor's filing decision was *objectively* reasonable—that

---

constitutional notice requirements, charging document must include all essential elements of the crime charged); *State v. Kenyon*, 150 Wn. App. 826, 832-35, 208 P.3d 1291 (2009) (under CrR 4.3, prosecutor has no discretion to delay charge for related offense "as a tactical maneuver").

[6] *Cf. Kalina v. Fletcher*, 522 U.S. 118, 130-31, 118 S. Ct. 502, 139 L. Ed. 2d 471 (1997).

the prosecutor fulfilled the statutory duty to "reasonabl[y]" decide whether there are "not sufficient mitigating circumstances to merit leniency." RCW 10.95.040(1).

Here, there is no supporting affidavit concerning the death notice to review. This court instead reviewed the defense's summary of the contents of the prosecutor's mitigation investigation, since the State agreed that that summary was accurate. Wash. Supreme Court oral argument, *supra*, at 3 min., 50 sec. That summary states that the prosecution's investigator did 24 phone interviews and one e-mail interview, that she introduced herself in those interviews as working for the prosecutor but did not specify that she was seeking mitigating information, that she also gathered apparently aggravating information, and that she failed to talk with the two people who knew Monfort best and for the longest time: his mother and aunt. *Id.*; App. to Monfort's Cross-Mot. for Discretionary Review at 191-92; Monfort's Resp. to State's Mot. for Discretionary Review at 8 n.2. Certainly, this is far more than the prosecutor did in *State v. Pirtle*, 127 Wn.2d 628, 642-43, 904 P.2d 245 (1995), likely because of advances in what we consider to be reasonable

9

investigation since the time that *Pirtle* was decided.[7] Certainly, it is far less than

what is required of effective defense counsel.[8]

I therefore concur with the majority's conclusion that this was reasonable. I

write separately to emphasize that under the language of the applicable statute, the

---

[7] In *Pirtle*, the prosecutor agreed to consider mitigating evidence presented by the defense but did not undertake any investigation of his own, instead relying solely on information contained in the defendant's criminal record. *Pirtle*, 127 Wn.2d at 642-43.

[8] *See, e.g.*, ABA, SUPPLEMENTARY GUIDELINES FOR THE MITIGATION FUNCTION OF DEFENSE TEAMS IN DEATH PENALTY CASES guidelines 10.11 B., C. (2008), *available at* http://www.americanbar.org/content/dam/aba/uncategorized/Death_Penalty_Representati on/Standards/National/2008_July_CC1_Guidelines.authcheckdam.pdf (last visited Nov. 12, 2013) ("The defense team must conduct an ongoing, exhaustive and independent investigation of every aspect of the client's character, history, record and any circumstances of the offense, or other factors, which may provide a basis for a sentence less than death. . . . Team members must conduct in-person, face-to-face, one-on-one interviews with the client, the client's family, and other witnesses who are familiar with the client's life, history, or family history or who would support a sentence less than death. Multiple interviews will be necessary to establish trust, elicit sensitive information and conduct a thorough and reliable life-history investigation."); ABA, GUIDELINES FOR THE APPOINTMENT AND PERFORMANCE OF DEFENSE COUNSEL IN DEATH PENALTY CASES guidelines 10.4 C. 2. a., 10.11 D., F.1 (rev. ed. Feb. 2003), *available at* http://www.americanbar.org/content/dam/aba/migrated/2011_build/death_penalty_repres entation/2003guidelines.authcheckdam.pdf (last visited Nov. 12, 2013) (defense team should include "at least one mitigation specialist and one fact investigator"; counsel "at every stage of the case should discuss with the client . . . means by which the mitigation presentation might be strengthened, and the strategy for meeting the prosecution's case in aggravation" in penalty phase counsel should consider "[w]itnesses familiar with and evidence relating to the client's life and development, from conception to the time of sentencing").

prosecutor's investigation was objectively reasonable and judicially reviewable—

not just that he subjectively believed it was reasonable.

Gordon McCloud, J.

González, J.

Fairhurst, J.

12